# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| EDWARD BOYER,<br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social Security<br>Administration,<br>    Defendant. | )<br>)<br>)<br>)    CAUSE NO.:4:13-CV-45-TLS-JEM<br>)<br>)<br>)<br>)<br>) |

## FINDINGS, REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE PURSUANT TO
## 28 U.S.C. § 636(b)(1)(B) & (C)

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Edward Boyer on June 27, 2013, and a Memorandum of Plaintiff [DE 11], filed by Plaintiff on January 3, 2014. Plaintiff requests that the April 18, 2012, decision of the Social Security Administration denying him disability benefits be reversed and remanded with instructions to award benefits. On February 21, 2014, the Commissioner filed a response. Plaintiff did not file a reply, and the time to do so has passed.

On May 2, 2014, District Court Judge Theresa L. Springmann entered an Order [DE 13], referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

For the following reasons, the Court recommends that Judge Springmann GRANT the relief requested in the Brief in Support of Complaint and remand this case for further proceedings.

**PROCEDURAL BACKGROUND**

On January 27, 2010, Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging he became disabled on April 21, 2009, due to chronic neck and back pain, nerve damage in his legs and arms, and anxiety. After his DIB application was denied initially and on reconsideration, Plaintiff requested a hearing in front of an Administrative Law Judge (ALJ).[1] On May 2, 2011, a hearing was held in front of ALJ William M. Manico. On May 11, 2011, ALJ Manico issued a decision finding Plaintiff disabled as of December 2, 2009. However, on September 14, 2011, the Appeals Council notified Plaintiff that it had on its own motion reviewed the decision and was remanding it to the ALJ.

On March 2, 2012, a second hearing was held in front of ALJ Edward P. Studzinski. On April 18, 2012, ALJ Studzinski issued a decision in which he found Plaintiff not disabled. On April 26, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On June 27, 2013, Plaintiff filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the Commissioner's decision.

**FACTS**

**A.    Medical Evidence**

*1.    Treatment Records*

Plaintiff's records indicate that he began receiving physical therapy and injections to treat back and neck pain after suffering an injury to his neck some time in 2004. On February 23, 2009, Plaintiff began seeing Dr. Keith Whiteside. On March 24, 2009, Dr. Whiteside noted that an MRI from a few years earlier showed signs of disease in the C5-6 and C6-7 vertebrae. Dr. Whiteside

---

[1] The SSI application appears to have been abandoned. The record contains an application for SSI, but the initial determination and reconsideration forms do not mention SSI.

ordered another MRI, which was performed on April 14, 2009. The MRI results noted the existence of a large left paracentral/lateral herniated nucleus pulposus with cord impingement at C5-C6 and an annular herniated nucleus pulposus with moderate to severe central canal stenosis at C6-C7.

Dr. Whiteside referred Plaintiff to neurosurgeon Randy Gehring, who first saw Plaintiff on April 21, 2009. Plaintiff reported to Dr. Gehring that the pain radiating from his neck down his left arm and, to a lesser extent, his right arm since his neck injury had gotten much worse in the prior two months. After reviewing X-rays of Plaintiff's spine, Dr. Gehring concluded that Plaintiff had "long-term neck pain with multilevel degenerative change, congenital stenosis, possible ossification of the posterior longitudinal ligament at C5-C6 and C6-C7, and now with a left-sided disk herniation." AR 391. Dr. Gehring recommended disk arthroplasty if Plaintiff's insurance would pay for it or, if not, a diskectomy. On April 27, 2009, Dr. Gehring performed a diskectomy.

At a follow-up with Dr. Gehring on May 21, 2009, Plaintiff reported that his pain had not changed. Dr. Gehring recommended physical therapy. On June 5, 2009, Plaintiff returned to Dr. Gehring and reported that his pain remained severe. Dr. Gehring recommended a second diskectomy and fusion at C5-C6 and C6-C7, which he performed on June 12, 2009.

On July 20, 2009, Plaintiff was evaluated by a physical therapist. He reported a "bone on bone sensation" in his neck, shoulder tightness, shooting pains down his left upper extremities, and dull, shooting pain and numbness in the fingers of his left hand. His physical therapy plan called for him to be seen two to three times a week for three to four weeks. Reports from the physical therapy sessions indicate that Plaintiff continued to experience pain or numbness in his neck and left arm and fingers. Dr. Gehring ordered a follow-up X-ray for October 9, 2009. The report noted that the alignment of Plaintiff's spine was normal.

3

Beginning on November 24, 2009, Plaintiff saw Dr. Carolyn Kochert for pain management services. On intake, Plaintiff reported pain running down his neck into his should blades and arms, weakness in his legs that caused him to almost fall, throbbing in the legs, shooting pains from his buttocks into his legs, swollen hands in the morning, and numbness like frostbite in his left arm and hand. Dr. Kochert noted that Plaintiff's past treatments has resulted in a 50% improvement in his condition.

Plaintiff continued to see Dr. Kochert regularly for pain management through at least January 2012. Plaintiff received regular cervical epidural spine injections. On at least one occasion, he stated that the epidurals helped with his neck pain but not the pain in his legs, shoulder, and arms, which he stated continued to worsen. An MRI from February 17, 2010, showed abnormalities associated with severe degenerative disc disease and mild bilateral stenosis. Notes from a December 28, 2010, visit state that Plaintiff's examination results and diagnosis remained largely unchanged.

On November 20, 2011, an MRI ordered by Dr. Kochert was performed. The report of the results concluded that there were new abnormalities since the February 17, 2010 MRI, including "new moderate loss of disc space height at C3-4" and "mild loss of disc space height at C4-5" and new herniations at C3-4 and C4-5, but that C7-T1 was unchanged.

On February 3, 2012, Plaintiff saw Dr. Gehring—after more than two years since his last follow-up—at Dr. Kochert's request. In his letter to Dr. Kochert, Dr. Gehring recounted Plaintiff's history and self-reported symptoms before concluding that "[t]here has been no dramatic change in his symptoms but he feels like this has been getting worse over time." AR 699. Dr. Gehring also offered a second opinion on the November 30, 2011, MRI. He wrote to Dr. Kochert that he did "not necessarily agree with the report" provided with the MRI, noting "degenerative disc change at C3-4

4

and C4-5 with eccentric bulging to the right side at C3-4 and to the left side at C4-5" but "no spinal cord compression." AR 699. He also noted that Plaintiff "does have a moderately narrow cervical canal on a congenital basis" but "no signal change in his cord." AR 699. Dr. Gehring's letter does not indicate that he performed any physical exam of Plaintiff on that date.

*2. Opinion Evidence*

On March 4, 2012, two days after the hearing in front of the ALJ, Dr. Gehring filled out a three-page form titled "Medical Statement" that instructed him to "[c]heck all that are present on examination or testing." AR 710-12. Dr. Gehring checked lines indicating that Plaintiff suffered from "[l]imitation of motion of the spine," "need[s] to change position more than once every two hours," and has "chronic nonradial pain and weakness." AR 710. Dr. Gehring indicated Plaintiff could stand for two hours at a time and for a total of six hours in a day. He also indicated that Plaintiff could sit for thirty minutes at a time and for a total of two hours a day, could walk for sixty minutes at a time and for two hours in a day, and could lift ten pounds frequently or occasionally. Dr. Gehring also opined that Plaintiff's pain, his other symptoms, and the side effects of his medications would frequently interfere with his attention and concentration. Finally, Dr. Gehring noted that Plaintiff would sometimes need unscheduled breaks during an eight-hour workday and that he would likely miss about two days of work a month because of his impairment or the treatment of it. Dr. Gehring provided no narrative explanation for any of his selections.

**B.     ALJ's decision**

The ALJ found that Plaintiff's "degenerative disc diseases of the cervical spine, status post fusion surgery with chronic pain syndrome, and degenerative disc disease of the lumbar spine" were severe impairments. He further found that Plaintiff did not have an impairment or combination of

impairments that met or equaled a Listing and that Plaintiff had an RFC for less than a full range of light work. The ALJ found the Plaintiff had no past relevant work but that there are jobs that exist in significant numbers in the economy that Plaintiff could perform.

In discussing his RFC determination, the ALJ acknowledged that if he adopted Dr. Gehring's opinion in its entirety, Plaintiff would be found disabled. However, he gave Dr. Gehring's opinion "little weight" because he found it inconsistent internally and with the rest of the records of Dr. Gehring's treatment.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ

"uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

7

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff's only argument is that the ALJ failed to properly determine the weight to give to the opinion of treating physician Dr. Gehring. The regulations state: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id*. To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." SSR 96-2p, 1996 WL 374188 at *3 (July 2, 1996) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)); *Gudgel*, 345 F.3d at 470. If any of these requirements are not met, an opinion cannot be given controlling weight; however if all of them are met, an opinion must be given controlling weight. SSR 96-2p, at *2. The rule's criteria reflect the deference due to treating physicians, who "are most likely to be the medical professionals most able to provide a detailed longitudinal picture of [a claimant's] medical impairment(s) and may bring a

9

unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone," while allowing an ALJ to discount an opinion that is contrary to other evidence in the record or appears to be based not on objective medical evidence, but solely on sympathy or on the claimant's subjective complaints. 20 C.F.R. § 404.1527(c)(2); *see Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) ("The advantage that a treating physician has over other physicians . . . is that he has spent more time with the claimant. . . . But the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since . . . many physicians will often bend over backwards to assist a patient in obtaining benefits."). As an exception to the rule, a medical opinion that a claimant is disabled, unable to work, cannot perform a past job, or meets a listing is never entitled to controlling weight because those issues are administrative findings reserved to the Commissioner. *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996); 20 C.F.R. § 404.1527(d).

If an ALJ determines a treating source's medical opinion is not entitled to controlling weight, it becomes "just one more piece of evidence," and its weight is determined according to the same factors as any other medical opinion. *Hofslien*, 439 F.3d at 376-77 (stating that once contrary evidence is introduced, the presumption of controlling weight for a treating physician's opinion "drops out and the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh"). These factors are: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which

an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c). Whatever weight the ALJ gives an opinion, the ALJ must give "good reasons" for his determination, *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011), although he need only minimally articulate them. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

Plaintiff argues that Dr. Gehring's opinion is entitled to controlling weight because it is well-supported by objective medical evidence, is not inconsistent with other substantial evidence in the record, and does not intrude on issues reserved to the Commissioner. Further, Plaintiff argues that the ALJ failed to make any findings to the contrary. The Commissioner responds that Dr. Gehring's opinion was not entitled to controlling weight and that the ALJ adequately articulates his reasons for not giving controlling weight.

In discussing Dr. Gehring's opinion, the ALJ wrote:

> The Social Security law provides that the medical opinion of a treating physician . . . is entitled to "controlling" weight if supported by objective medical evidence and consistent with other substantial evidence of record, and is entitled to "great" weight unless there is persuasive contradictory evidence. However, statements that a claimant is "disabled", "unable to work", "can or cannot perform a past job", or "meets a Listing", or the like, are not medical opinions but are administrative findings dispositive of a case. . . . Such issues are reserved to the Commissioner. . . . [and] can never be entitled to controlling weight . . . .

AR 31 (citations omitted). The ALJ did not explicitly state that Dr. Gehring's opinion was not entitled to controlling weight, that it was not well-supported by objective medical evidence, that it was inconsistent with substantial evidence in the record, or that it involved issues reserved to the Commissioner. Instead, he continued:

> Under the regulations, I must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physicians' specialty; the types of tests performed; and the consistency and support for the physician's opinion.

AR 31 (citing 20 C.F.R. § 404.1527(c)(2)-(5)). He then went on to determine that Dr. Gehring's opinion was entitled to "little weight" based on those factors. AR 31.

The ALJ cites the rule that an opinion on an issue reserved to the Commissioner is not entitled to any special weight, but he does not state how—or even if—this rule affected his decision. If the ALJ discounted Dr. Gehring's opinion because he found it was on an issue reserved to the Commissioner, he was mistaken. Even if some of Dr. Gehring's opinion might arguably invade the ALJ's prerogative of making an RFC finding, the parts of Dr. Gehring's opinion that the ALJ wrote would result in a finding of disability if adopted—including that Plaintiff "could lift no more than ten pounds frequently and occasionally, that [Plaintiff's] pain medications would frequently interfere with attention and concentration, and further, that [Plaintiff] would need unscheduled breaks"— are not statements on issues reserved to the Commissioner. *See Bates v. Colvin*, 736 F.3d 1093, 1100 n.4 (7th Cir. 2013) ("[S]tatements within a document labeled as an RFC that do not state what a claimant can or cannot do in a given day constitute a treating physician's opinion to which the ALJ must defer."); *see generally* SSR 96-5p, at *4 (distinguishing between a "medical source statement" and an RFC); *see also Bjornson v. Astrue*, 671 F.3d 640, 648 (7th Cir. 2012) ("When [the doctor] stated on the form that [the claimant] could sit, stand, and walk for a total of only three hours in an eight-hour workday, he was not invading any prerogative reserved to the Social Security Administration" even if "his statement inescapably implied that [the claimant] can't work full time."). Because it is unclear why the ALJ would include this rule if it had no impact on his determination, the Court is concerned that the ALJ may have mistakenly discounted Dr. Gehring's

opinion because he believed it to be on issues reserved to the Commissioner.

The Court also finds it troubling that the ALJ provided little analysis of the objective diagnostic tests in the record that might arguably show Dr. Gehring's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2) In her response brief, the Commissioner argues that the ALJ did, in fact, find that the opinion was not "well-supported" when he wrote that it was "without narration or explanation." Resp. 7 (quoting AR 31). However, the amount of explanation a medical source gives is only one aspect of the "supportability" factor by which the weight of a medical opinion is determined. 20 C.F.R. § 404.1527(c)(3). When the opinion is one of a treating physician, the primary question is whether it is "well-supported *by medically acceptable clinical and laboratory diagnostic techniques*" in the record. 20 C.F.R. § 404.1527(c)(2) (emphasis added); *see also White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (declining to give an opinion controlling weight because it was based on "subjective complaints rather than accepted medical techniques"). Plaintiff argues that Dr. Gehring's opinion is, in fact, "well-supported" by his MRIs, X-rays, and other tests in the record, even if Dr. Gehring did not specifically reference them in the form describing Plaintiff's physical limitations. Although the ALJ mentions MRIs, X-rays, and other tests throughout his summary of Plaintiff's treatment, he offers no assessment of whether these "medically acceptable clinical and laboratory diagnostic techniques" support or detract from Dr. Gehring's opinion. 20 C.F.R. § 404.1527(c)(2). Instead, the ALJ suggests that Dr. Gehring's opinion "*may* be based on [Plaintiff's] subjective reports" and sympathy for Plaintiff rather than on objective diagnostic techniques, but he provides no support for this statement. AR 31 (emphasis added). Because the ALJ's failed to discuss whether the results of medically acceptable clinical and laboratory techniques found in the record support Dr. Gehring's

13

opinion, the Court cannot determine whether he adequately considered this factor in declining to give Dr. Gehring's opinion controlling weight. Accordingly, the Court finds this part of the ALJ's analysis is inadequately articulated. *See Giles*, 483 F.3d at 487 (stating that an ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review.").

The ALJ does purport to cite inconsistencies between Dr. Gehring's opinion and other evidence, but those inconsistencies are either not adequately explained or do not constitute substantial evidence. First, the ALJ states that the "broad limitations" in Dr. Gehring's March 2012 opinion are inconsistent with his evaluation of Plaintiff one month earlier, but he does not explain why they are inconsistent. AR 31. Accordingly, the Court cannot determine whether this reason supports denying Dr. Gehring's opinion controlling weight. *See Clifford*, 227 F.3d at 871 (concluding that the ALJ did not adequately articulate his reasoning for finding a treating physician's opinion inconsistent with other evidence in the record because he did not explain how they were inconsistent). The ALJ also writes that there is an "apparent inconsistency" between Dr. Gehring's opinion that Plaintiff had moderate neck pain and his opinion that Plaintiff could occasionally climb ladders, "a function that to be done safely obviously requires considerable strength and painless coordination of the upper extremities and neck while reaching and grasping." AR 31. However, even if the Court accepts the ALJ's conclusory assumption that moderate pain is inconsistent with climbing ladders, this single piece of evidence is not enough by itself enough for a reasonable mind to find Dr. Gehring's opinion is not worthy of controlling weight. *See* SSR 96-2p, at *3 (stating that substantial evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Finally, the ALJ states in conclusion, "To

the extent his opinions are inconsistent with the residual functional capacity I assessed herein, they are given little weight as inconsistent, both internally and with his records of treatment." AR 31. However, other than the two inconsistencies noted above, the ALJ gives no examples of how Dr. Gehring's opinion is either internally inconsistent or inconsistent with his treatment records. Because the evidence of inconsistencies cited is not substantial and the ALJ's explanation on this point is otherwise inadequate, the Court finds this factor cannot support the ALJ's decision to deny Dr. Gehring's opinion controlling weight.

The final reason the ALJ gives for discounting Dr. Gehring's opinion is that Dr. Gehring had not treated Plaintiff between Plaintiff's second surgery in June 2009 and his visit with Dr. Gehring in February 2012, just prior to the hearing. However, this factor only matters if an opinion is not entitled to controlling weight. 20 C.F.R. § 404.1527(c) ("*Unless* we give a treating source's opinion controlling weight under paragraph (c)(2), we will consider all the following factors in deciding the weight we give any medical opinion.") (emphasis added); 20 C.F.R. § 404.1527(c)(2) ("*When* we do not give the treating source's opinion controlling weight, we apply the factors listed" in the rest of section 404.1527(c)) (emphasis added); *Bates*, 736 F.3d at 1099-100 ("*[O]nce* well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider.") (emphasis added); *Wyatt v. Astrue*, No. 11-CV-1467, 2013 WL 785255 (C.D. Ill. Mar. 1, 2013) (citing *Hofslien*, 439 F.3d at 377) ("*If* contradicting evidence results in a conclusion that the opinion is not entitled to controlling weight, the ALJ must *then* determine how much weight to give the opinion using the various factors listed in the regulations.") (emphasis added); *cf. Kirsch v. Colvin*, No. 11 C 9199, 2013 WL 5498089, *4 (N.D. Ill. Oct. 2, 2013) ("Under the plain language of the

regulations, once the ALJ assigned [a treating physician's] opinion controlling weight, it was no longer necessary for her to further analyze the factors in 20 C.F.R. § 404.1527(c)(1)-(6) to determine what weight to give that opinion.")  Because the Court is not convinced that the ALJ adequately considered whether Dr. Gehring's opinion is entitled to controlling weight, the gap in treatment cannot by itself support the ALJ's conclusion.

It is unclear from the ALJ's decision whether—before treating Dr. Gehring's opinion like any other piece of evidence—he actually considered whether the opinion involved issues reserved to the Commissioner, was supported by objective medical tests in the record, or was not inconsistent with other substantial evidence in the record.  Accordingly, the Court finds that the ALJ's decision was not adequately articulated and must be remanded. *Clifford*, 227 F.3d at 871 (remanding because of the lack of adequate articulation for discounting a treating physician's opinion). Plaintiff requests that the Court remand with instructions to award of benefits.  However, an award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356.  In this case, Plaintiff has failed to show that all factual issues have been resolved such that the record supports an award of benefits.  Accordingly, the Court remands with instruction for the ALJ to re-evaluate whether Dr. Gehring's opinion is entitled to controlling weight and to adequately articulate his reasons for his determination, but gives no instruction on the ultimate question of disability.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Judge Springmann **GRANT** Plaintiff's request in his Memorandum of Plaintiff [DE 11] to remand this matter for further administrative proceedings.  However, the Court **RECOMMENDS** that Judge Springmann **DENY**

16

Plaintiff's request to award benefits.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 26th day of August, 2014.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record